[No. 1861.]

JOHN MELTON *v.* THE STATE.

1. ILLEGALLY MARKING ANIMALS — INDICTMENT. — Article 759 of the Penal Code, defining the offense of illegally marking and branding certain enumerated animals belonging to another, without his consent and with the intent to defraud, provides that the same shall be punished in the same manner as if

the offense committed was theft of the animals. Theft of a horse, mule, ass or cattle is made by statute a felony *per se*, and therefore the indictment for theft of those animals need not allege their value, and the same rule applies to the illegal marking or branding of those animals. But the rule is different with respect to the theft or illegal marking of hogs, sheep or goats, and it is necessary that the indictment allege their value in order to grade the offense as a felony or a misdemeanor. See the opinion *in extenso* on the question.

2. SAME.— The indictment alleging the value of the animal illegally marked to be less than $20 charges a misdemeanor, and, independent of proof of value, will, upon proof of the illegal act of marking, support a misdemeanor conviction. See the opinion *in extenso* on the question.

3. SAME — PROOF OF VALUE.— Inasmuch as the punishment for illegally marking a hog, if the offense is alleged as a misdemeanor, is not graded by the value of the animal, no proof of value is essential to sustain on appeal a conviction for the misdemeanor.

APPEAL from the County Court of Grimes. Tried below before the Hon. George D. Neal, County Judge.

The conviction was for illegally marking five hogs, of the aggregate value of $10, the property of Burke Haynes, without the consent of the said Haynes, and with intent to defraud him, the said Haynes. The offense was alleged to have been committed in Grimes county, Texas, on the 15th day of March, 1885. The penalty assessed against the appellant was a fine of $10, and confinement in the county jail for the period of five days.

The first witness for the State, Burke Haynes, testified, in substance, that he lived on Reuben Bennett's place in Grimes county, Texas. In March, 1885, the witness owned a sow, two shoats six or seven months old, and two pigs six or eight weeks old. Those hogs ran on the range back of Bennett's field and about a mile from his house, and near Lem Hill's field. Witness bought the mother of the sow from Bennett, who marked this sow and four others of the same litter for witness. The sow ran with a bunch of Bennett's hogs on the same range and was usually fed by Bennett, though sometimes by witness. On Monday, about March 15, 1885, witness, Bennett and Alex. White went together to look for the hogs. After some search the animals described were found. The two pigs were fresh marked — as late perhaps as on that same morning. The two shoats were in the same marks — crop and over half crop in the left, and an under-slope and over-bit in the right ear — but appeared to have been so marked at least three months before. All of the hogs described were caught, tied, placed in witness's wagon and taken home.

The defendant, who lived about two and a half miles distant from the witness, in company with James and Abe Kennard and Lem Hill, came to witness's house about sundown on the same day, claimed the hogs as his, and wanted to take them home. He and witness got inside the pen, caught and examined the sow, which the witness knew to be his. Witness proposed to leave the question of ownership to Bennett, who knew his, witness's, hogs better than he did himself. Defendant refused to go to Bennett about the matter. All of the hogs, save one of the shoats which witness still had at his house, had died after they were recovered by witness. Witness did not know how the pigs and the dead shoat happened to die. Witness's sons choked the sow to death in an attempt to pen her. The sow was dead when this case was tried at a former trial. Witness knew then that she was dead; at least he had been so informed by his boys. He testified on the former trial that he did not know where the sow was. The hogs were marked without the witness's consent.

Reuben Bennett testified for the State, in substance, that Burke Haynes lived on his place in Grimes county. In March, 1885, Haynes owned a sow, two pigs and two shoats. Witness sold Haynes the mother of the sow, and when the sow was a pig marked her and four other pigs of the same litter in Haynes's mark, which was a split in the left ear, and a crop and two under-bits in the right ear. Defendant lived on the old Gorbet place, about three miles distant from the witness's house. Witness went with Haynes and Alex. White to the range to look for the hogs on Monday, about March 15, 1885. Witness called for the hogs, and after a time found them. Witness saw that the pigs were fresh marked, as late he thought as on that very morning. The shoats had been put in the same mark as the pigs, but as far back as during the previous winter. The sow's mark had been changed into the same mark, which was described by Haynes in his testimony. Witness knew who owned that mark only by hearsay. Witness had never before seen that hog-mark on the range. The hogs when found were caught. Witness examined the changed mark on the sow for the purpose of identifying it. Witness knew the sow to belong to Haynes, as he had attended to Haynes's hogs ever since he sold him the old sow, and fed them whenever he fed his own, which was as often on an average as twice a month. Witness last saw the animals described on the Thursday before the Monday in question. The pigs were not then marked. The ears of the two pigs were bleeding when they were found on Monday; the blood was about dry on the sow's ears,

showing that her mark was changed two or three days before, and the ears of the two shoats showed that they had been re-marked during the winter before. Witness, who had handled hogs all of his life, thought that he was familiar with hog-habit. He had never known a hog to stray two miles off its accustomed range, but had known hogs to follow a streak of mast a longer distance. Witness knew Bunk Arrington; had seen Bunk's hogs six miles from home, and helped kill them at that distance from home, but Bunk drove them to the place of slaughter. Witness had frequently seen hogs so very much alike in flesh-mark that it was next to impossible to tell them apart. Witness had noticed the change in the ear-mark of the shoats prior to the Monday in question, but had made no effort to decipher the new mark or discover whose it was.

Lem Hill was the next witness for the State. He testified that he knew nothing about Burke Haynes owning hogs in March, 1885. He had heard of the charge against the defendant, now being tried. On Monday, about March 15, 1885, the witness was in Rocky creek bottom with his dog, hunting Mr. Turner's cow. While thus employed he heard the baying of a dog, which he followed, thinking it was his dog giving mouth. He, however, found it to be defendant's dog rallying the bunch of hogs, including the sow in dispute, and a sow which belonged to William Kennard. Defendant and William Kennard joined the witness presently. They asked about hogs, and witness about Turner's cow. They told witness where he would find the cow. On his return with the cow, witness heard somebody driving hogs in the direction of William Kennard's house, which was near witness's house. Witness afterwards passed Kennard's house on his way to town, and saw the defendant, James and William Kennard trying to drive some hogs from a large into a small lot. Of those hogs Kennard owned some, and defendant claimed others. A sow, claimed by defendant, and two unmarked pigs escaped, and were followed by the dogs and defendant. When the defendant returned after a short time, witness asked him if the sow got away, and he replied that she did, but that he caught and marked the pigs. On his way home from Anderson that evening Mr. Bennett met and asked witness who gave the mark that was on the hogs described in the indictment, and witness told him that that mark was John Melton's. Bennett then said that he found some of Burke Haynes's hogs in that mark on that morning. Witness, defendant and Kennard met in the woods when the dog was rallying the hogs at about 8 o'clock in the morning. It was about 9 o'clock when the witness saw the hogs in Kennard's lot. The hogs which

the defendant had at Kennard's lot and claimed to own were a sow, two shoats about six months old, and two pigs about six weeks old. The sow and the two shoats were then in defendant's mark, and the pigs were unmarked. When the witness approached the Kennard lot, the parties were trying to pen the animals for the purpose, they said, of marking them. Defendant claimed to own them. Witness had often seen the sow with Bennett's hogs back of his, witness's, field. He had never, before the Monday in question, noticed the mark, further than to observe that it was a mark. He had thought the hogs belonged to Bennett because they always ranged with Bennett's hog stock. Defendant owned hogs, but they ran in another range in a direction opposite Bennett's range.

In the evening of the same Monday, the witness went with John and Abe Kennard to Haynes's place. James Kennard did not stop at the lot, but went on to the house where Haynes's wife was. Witness called to Haynes to come to the lot, as defendant wanted to settle the dispute about the ownership of the hogs. Defendant and Haynes got into the pen, caught and tied the sow down, and defendant said: "Now you see the mark is an old one." Haynes replied: "Well, you will have to see Mr. Bennett about it; let us go over there and see him." Defendant refused to go to Bennett's, but insisted that the hogs belonged to him. The sow's ears were somewhat bloody, but the witness did not know whether her ears had been recently cut, or torn by dogs. The State closed.

William Kennard, the first witness for the defense, testified that he, his brother and the defendant went to Rocky creek bottom on Monday, about March 15, 1885, to get up hogs belonging to each of them for the purpose of marking the pigs. Back of Bennett's field and near Lem Hill's they found a sow belonging to witness, and a sow, two shoats and two pigs belonging to defendant. They drove the animals to witness's lot to mark the pigs, but defendant's sow and two unmarked pigs escaped. Defendant followed them. He presently returned without the animals, but said that he caught and marked the pigs. Lem Hill joined the parties named at witness's pen. Defendant did not cease his endeavors to drive his hogs into a small inner pen. Defendant claimed the hogs publicly as his property, and they were in his mark. The sow was in defendant's mark and the mark was an old one. There was no blood or wounds on her ears. Witness first saw the sow in dispute about two months before Christmas, 1884, at which time she was in the defendant's mark. He heard defendant inquiring for such an animal during the summer of 1884. From the time he first saw the sow in the fall of

1884 until the Monday in March, 1885, mentioned, witness always saw the shoats with her, and they were in defendant's mark. Defendant had other hogs in the same mark, but witness could not recollect that he had ever seen any of them on the exact range of hogs in question.

James Kennard corroborated William Kennard, and in addition stated that he went with defendant in pursuit of the hogs when they escaped from William Kennard's lot. They caught and marked the pigs in defendant's mark. Witness first saw the sow in controversy a few days prior to June 19, 1884. She was then in defendant's mark. Witness went with defendant, Lem Hill and Abe Kennard to Burke Haynes's on Monday evening to examine the hogs. Defendant then claimed the sow, shoats and pigs which were in Haynes's pen, but declined Haynes's proposition to submit the question of ownership to Mr. Bennett. The party left the animals in Haynes's pen. The sow and shoats had not been recently marked, and were in the defendant's mark. Witness and Abe Kennard got inside of Haynes's pen with Haynes and defendant to examine the hogs.

Abe Kennard testified for the defense that he went with defendant, James Kennard and Lem Hill to Haynes's on a Monday evening in March, 1885, to look at the hogs described in the indictment. The hogs were all in the mark of the defendant, the pigs being freshly marked. The marks on the sow and shoats were old. One of the sow's ears had been lately wounded, evidently by dogs; but the mark was not effaced or injured. Witness first saw the sow a few days before June 19, 1884, at which time she was in defendant's mark. Witness did not see the hogs at William Kennard's pen on Monday morning. The defense closed.

Alex. White testified for the State, in rebuttal, that he was with Bennett, Burke Haynes and the latter's son when the hogs were found and captured in the bottom as stated by Bennett and Haynes in their testimony. In appearance the marks on the ears of the two shoats were several months old; those on the sow, two or three days old, and those on the pigs, a few hours old. The ears of the sow indicated plainly that her original mark had been changed.

Mrs. Haynes testified in rebuttal for the State that she was at home when defendant, James and Abe Kennard and Lem Hill came to Haynes's pen to examine the hogs described in the indictment. Neither of the Kennards nor Hill went inside of the hog pen, but looked on from the outside. The sow's ears were bleeding at that time.

Joseph White testified for the defense that he had known the defendant all his life, and knew that he had always sustained an unimpeachable character for honesty. He was once charged with theft of hogs, but on trial was honorably acquitted, the prosecution being in every way malicious. The verdict of the jury in the case referred to by Mr. White was produced by the clerk and read in evidence.

The motion for new trial raised the questions discussed in the opinion.

*McDaniel & Dodd*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. This is a conviction for marking hogs, the property of Burke Haynes, without his consent and with the intent to defraud.

Article 759, Penal Code, provides that "any person who shall mark or brand any horse, mule, ass, or cattle, or who shall mark any sheep, goat or hog, not being his own, and without the consent of the owner, and with the intent to defraud, shall be punished in the same manner as if he had committed theft of such animal."

The aggregate value of the hogs charged to have been marked is alleged to be $10. If a horse, mule, or ass be the animal, there is no necessity for alleging its value, because it is a felony and is punished by confinement in the penitentiary, without reference to its value. But, being hogs, must value be alleged? Certainly, because if of the value of $20, the punishment is confinement in the penitentiary; if under $20, it is a misdemeanor with milder punishment. This indictment, however, alleges value, and upon its face simply charges a misdemeanor, and of misdemeanor appellant stands convicted.

But there is no proof in the record that the hogs, or either of them, were of any value. All doubt, however, as to whether defendant is charged with a felony or misdemeanor is removed. By charging value the degree of criminality and the consequent punishment is clearly indicated. Ten dollars being the alleged value of the hogs marked, a conviction for felony would be illegal, though in fact the hogs should be proven to be of greater value than $20. If under $20, the punishment is the same without regard to the actual value; and this would be the case if the value *alleged* is under $20, though in fact the hogs were of greater value than $20,—the State being confined to the allegation.

But it may be urged that, as the punishment for this offense is the same as that imposed for the theft of such animal; and that value must be alleged and proven in all prosecutions for theft, except theft of certain animals, to wit: horses, mules and asses, therefore *value must be proved* in this case. What, therefore, is the rule upon this subject?

Mr. Bishop upon this subject says: " *The allegation of value —* *Why and when.*— The allegation of value is not made, like the description of the property, and its ownership, to identify the transaction, but to indicate the degree of criminality, and the consequent punishment. Hence it is required where the kind or extent of the punishment depends on the value of the stolen articles; but otherwise when it does not." (Bish. Cr. Proc., 2d vol., 713; *Sullivan* v. *The State*, 13 Texas Ct. App., 462; *Collins* v. *The State, ante*, p. 197.)

We desire to be something more specific before leaving this subject. If this was a conviction for felony, then there should not only be an allegation that the value of the hogs was $20 or more, but this allegation must be shown by this record to have been established by the proof; for the very plain reason that a conviction and punishment for felony, depending upon a certain value of the stolen or marked property, must have for its support both allegation and proof. On the other hand, this conviction being for *misdemeanor*, its punishment is not graded by the value of the property marked, and hence there is no necessity for proof of value.

Again, it may be contended that as the punishment is the same as that in theft of the animal, and as at common law value must be alleged and proved in all cases of theft, therefore value must be proved in this case. The things or articles in which a person may have property are innumerable and unlimited, and, as property may be had in things without value, the rule obtained in larceny that value should be alleged and some value be proven, and this rule in some cases may be the law of this State. But when our Legislature by general law attempts to protect the owner's rights in this specific property by name, certainly we should judicially know that these animals are of some value; for the act punishing the illegal marking of these animals without the consent of the owner presupposes that they are of some value.

The grounds relied upon by counsel for defendant have been considered; but we do not think any of them well taken. The judgment is affirmed.

*Affirmed.*